## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. 3:09cv376-DSC

| | |
|---|---|
| **COMMERCIAL CREDIT GROUP, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND ORDER** |
| _____ ) | |
| **FALCON EQUIPMENT, LLC OF JAX,** ) | |
| **FALCON EQUIPMENT, INC., TGR** ) | |
| **ENTERPRISES, LLC, WILLIAM J. RIALS,** ) | |
| **and DEREK J. RIALS,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

 **THIS MATTER** is before the Court on "Plaintiff's Motion for Partial Summary Judgment" (document #17) filed on November 2, 2009, and "Defendant's Response to Motion for Partial Summary Judgment" (document #18) filed on November 19, 2009. On December 2, 2009, Plaintiff filed "Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion Seeking Partial Summary Judgment" (document #19). Plaintiff filed "Plaintiff's Brief Addressing Choice of Law" (document #20) on December 7, 2009. Defendant filed "Defendant's Response to Partial Summary Judgment Concerning Choice of Law" (document #21) on December 9, 2009.

 The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

 Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant in part</u> and <u>deny in part</u> Plaintiff's Motion for Partial Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This diversity action arises out of a series of loans Plaintiff Commercial Credit Group, Inc. ("CCG") made to Defendants Falcon Equipment, Inc. ("FEI") and Falcon Equipment, LLC of Jax, ("FEJ") for the purchase of construction equipment.

Plaintiff CCG is a Delaware corporation located in Charlotte, North Carolina and operates as a commercial equipment finance company. FEJ is a Georgia limited liability company located in Cumming, Georgia whose managers and members are William J. Rials, his son, Derek Rials and Rudy Johnston. (document #17-4, Exhibit E, "Written Consent of Members and Managers"). FEI is a Georgia corporation also located in Cumming, Georgia that deals in heavy equipment machinery whose CEO, CFO, Secretary and Agent is William J. Rials.[1]

To secure the repayment of the loans, Plaintiff and Defendants FEI and FEJ entered into a series of security agreements, (collectively "the security agreements"), between February 8, 2006 and July 2, 2008.  Plaintiff entered into eight (8) security agreements with FEI, and four (4) security agreements with FEJ. (document #17-3, Exhibit A). The security agreements created a special type of security interest called a purchase money security interest in goods[2], whereby Defendants'

---

[1] According to the Georgia Secretary of State's "Annual Registration History," Derek Rials is not an officer of FEI. http://corp.sos.state.ga.us/corp/soskb/Corp.asp?829458

[2] 6 Del.C. §9-103(b) **Purchase money security interest in goods.** –A security interest in goods is a purchase-money security interest:
(1) to the extent that the goods are purchase-money collateral with respect to that security interest;
(2) if the security interest is in inventory that is or was purchase-money collateral, also to the extent that the security interest secures a purchase-money obligation incurred with respect to other inventory in which the secured party holds or held a purchase-money security interest; and
(3) also to the extent that the security interest secures a purchase money obligation incurred with respect to software in which the secured party holds or held a purchase-money security interest.

construction equipment became the collateral to secure the repayment of the loans. Defendant FEI then wrongfully sold items of the collateral to various purchasers between February 15, 2007 and September 24, 2008, in violation of Plaintiff's security interest in the collateral. (document #17-3, Exhibit D). Paragraph 4 of the security agreements states that the "Debtor will not sell, assign, mortgage, lease, pledge or otherwise dispose of the Collateral without the prior written consent of the Secured Party." (document 17-3, Exhibit A).

Subsequently, Defendants William J. Rials, Derek Rials, and TGR Enterprises, LLP, agreed to jointly and severally guaranty payment of all obligations of Defendants FEI and FEJ to Plaintiff. On October 23, 2007, Defendants William J. Rials and Derek Rials executed a "Secured Guaranty" ("guaranty") in favor of Plaintiff. (document #17-3, Exhibit C, pp. 58-9). On October 20, 2008, TGR Enterprises, LLC, executed a "Secured Guaranty" in favor of Plaintiff.[3] (document #17-3, Exhibit C, pp. 60-1).

On January 29, 2009, Defendants FEI and FEJ, as co-makers, executed a "Negotiable Promissory Note" ("note"), payable to Plaintiff in the amount of $2,207,135.10. (document #17-3, p. 56). The note consolidated the FEI and FEJ debts owed to Plaintiff.

After failing to make payments on the note, Defendants FEI and FEJ defaulted on the promissory note. Plaintiff repossessed only a portion of the collateral, because Defendants had not surrendered all the collateral. On August 4, 2009, Plaintiff held a public auction to dispose of the collateral. Plaintiff bid on and purchased the repossessed collateral at the auction. Plaintiff then applied the amounts received from the sale of the collateral to the balance on the note. The unpaid

---

[3]TGR Enterprises, LLC was a Georgia limited liability company with a principle place of business in Cumming, Georgia, but was administratively dissolved on May 16, 2008.

balance on the note is $1,391,532.59.

Plaintiff filed this action on August 28, 2009, seeking a deficiency balance of $1,414,282.59 plus interest, attorney's fees and costs, as well as other relief. In the Complaint, Plaintiff alleges four separate claims against Defendants.

The first claim is a breach of contract action for a deficiency judgment against all Defendants jointly and severally for the amount remaining unpaid under the note. Plaintiff seeks judgment on either the note or the guaranties.

Plaintiff's second claim is for the conversion of property arising from the Defendants' wrongful sale of the collateral. Plaintiff seeks a judgment against Defendants FEJ, FEI, William J. Rials and Derek J. Rials for the value of each item of the collateral wrongfully sold by Defendants.

Plaintiff's third claim is a general fraud claim against Defendants FEJ, FEI, William J. Rials, and Derek J. Rials arising out of the impermissible sale of the collateral. Plaintiff is not seeking summary judgment as to the fraud claim.

Plaintiff's fourth claim is made pursuant to the Uniform Fraudulent Transfer Act. However, the Court cannot determine from the pleadings whether Plaintiff is making a claim under the North Carolina (N.C.G.S. §§ 39-23.1 *et seq*.) or Georgia statutes (O.C.G.A. §§ 18-2-70 *et seq*.). Plaintiff has not sufficiently pled under either statute because the Plaintiff failed to include any citation to either statute in the Complaint.

Plaintiff is seeking summary judgment as to claims one, two and four.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted

when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848, 850 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083, 1089 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

### B.  Choice of Law

 In this diversity action, the Court applies North Carolina's substantive law, including its choice of law rules. Colgan Air, Inc. V. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). ("Because we sit in diversity in this case, we must apply the substantive law of the forum state including its choice of law rules.")

As to Plaintiff's claim for breach of contract, the Court must first address the validity of the Delaware choice of law provision in the parties' promissory note. (document# 17-3). In this case,

the promissory note contains a clause providing that "this note is made and shall be construed under the laws of the state of Delaware." (document# 17-3).[4] A choice of law provision names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated. Johnston County v. R.N. Rouse & Co., 331 N.C. 88, 92, 414 S.E.2d 30, 33 (1992).

Choice of law contract clauses are enforceable in North Carolina. Tanglewood Land Co., Inc. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980); A.E.P. Indus., Inc. v. McClure, 308 N.C. 393, 402, 302 S.E.2d 754, 760 (1983); Perkins v. CCH Computax, Inc., 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992). The North Carolina Supreme Court has held that where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect. Tanglewood, 299 N.C. at 262, 261 S.E.2d at 656.

The parties' choice of law is generally binding on the interpreting court as long as the parties had a reasonable basis for their choice and the law of the chosen state does not violate a fundamental public policy of the state or otherwise applicable law. See Boudreau v. Baughman, 322 N.C. 331, 342, 368 S.E.2d 849, 857-8 (1988) ("To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state."); See also Howard v. Howard, 200 N.C. 574, 158 S.E. 101, 104 (1931) (foreign laws will not be given effect when contrary to the settled public policy of the forum, in cases such as prohibited marriages, wagers, lotteries, racing, contracts

---

[4]Neither party addressed the choice of law provision in their briefs. The court had to order supplemental briefing on this threshold issue.

6

for gaming or the sale of liquor, and others).

The parties had a reasonable basis for their choice of Delaware law to govern the promissory note because Plaintiff is a Delaware corporation and the parties agreed that Delaware law would govern the promissory note. Neither party contends that applying Delaware substantive law to the promissory note violates North Carolina public policy. Additionally, since the present case is not of the classes suggested in Howard, it does not offend the public policy of North Carolina to apply Delaware law.

The Court declines to apply a "substantial relationship" test to determine the validity of the choice of law provision because the North Carolina Supreme Court has only applied a similar test in the absence of an agreement between the parties. See Boudreau v. Baughman, 322 N.C. 331, 342, 368 S.E.2d 849, 857-8 (1988) (explaining that in Uniform Commercial Code cases, absent an agreement of the parties, North Carolina law will apply to transactions bearing an "appropriate relation" to this State. N.C.G.S. 25-1-105 (2008)). The parties urge the application of Georgia law because Delaware does not have a "substantial relationship" with the parties or the transaction. The parties cite Cable Tel. Servs., Inc. v. Overland Contracting, Inc., 154 N.C. App. 639, 643, 574 S.E.2d 31, 33-34 (2002) in support of this proposition.

Intermediate state court decisions are not binding on this Court. Iodice v. U.S., 289 F.3d 270, 275 (4th Cir. 2002) ("Where state law provides the rule of decision, federal court must rule as the state's courts would, treating decisions of the state's highest court as binding, and departing from an intermediate court's fully reasoned holding as to state law only if convinced that the state's highest court would not follow that holding.").

Furthermore, the substantial relationship test, as the parties urge the Court to apply it, is

problematic. Its application would allow the parties to avoid an otherwise enforceable choice of law provision by contending that a different state bears a more substantial relationship to the transaction than the state chosen in the contract. The Court rests its decision not on which state can claim the most substantial contacts, but on the policy of giving effect to the parties' agreement.

The plain language of the note provides for the application of Delaware law. The choice of law clause states that the note shall be "construed under the laws of Delaware." The clause applies to the interpretation of the note in any type of dispute, including disputes over the performance of the note, and is not limited in its application. This case is a dispute over the performance of the contract.[5] Accordingly, the Court will apply the substantive law of Delaware to the determination of Plaintiff's claim for breach of contract. We note that the law of Georgia is substantially the same as that of Delaware in this case.[6]

Georgia law controls Plaintiff's claim for conversion because the alleged conversion of the collateral took place in Georgia and North Carolina follows the rule that controlling law is *lex loci delicti commissi* in tort actions. Petrea v. Ryder Tank Lines, Inc., 264 N.C. 230, 231, 141 S.E.2d 278, 279 (1965); Shaw v. Lee, 258 N.C. 609, 610, 129 S.E.2d 288, 289 (1963)(holding that the law of the state in which the tort occurs governs the case).

Plaintiff's claim under the Uniform Fraudulent Transfer Act ("UFTA") is governed by

---

[5]Plaintiff alleges in the Complaint that Defendants FEI and FEJ defaulted on the promissory note by failing to remit monthly payments to Plaintiff as required by the note. Plaintiff also alleges that Defendants FEI and FEJ failed to surrender to Plaintiff all the collateral in which Plaintiff has a security interest.

[6]For example, Ga. Code Ann. § 11-9-301 (2009) and Del. C. 6, § 9-301 (2009) are substantively identical, as noted by Plaintiff. Those sections state that the law governing perfection and priority of security interests, as a general rule, is the law of the jurisdiction where the debtor is located.

Georgia's version of the UFTA, O.C.G.A. §§ 18-2-70 *et seq.* It is arguable that Delaware law should apply to Plaintiff's UFTA claim because the security agreements all provide that Delaware law should apply.[7] But, the dispute here cannot be accurately described as one involving rights in the security agreement as between the parties. The issue framed by the Plaintiff is whether certain conveyances were fraudulent as to Defendant Derek J. Rials. Because the instant controversy actually concerns not the validity of the transfer, but whether that transfer was fraudulent vis a vis Defendants, it is one of tort law, not contract law. Accordingly, it should be determined by conflict of laws principles governing the selection of law in tort cases. North Carolina choice of law principles for tort cases dictate that the substantive law of Georgia be applied to Plaintiff's UFTA claim because Georgia is the state where the alleged fraudulent conveyance occurred.

### C.  Breach of Contract

Four issues are raised by the briefs as to Plaintiff's breach of contract claim.[8] The first two concern whether Plaintiff's security interest and Defendants' personal guaranties survive the execution of the note. The third deals with the commercial reasonableness of Plaintiff's purchase of the repossessed collateral. The fourth issue is whether the note is unenforceable for lack of

---

[7]Paragraph seventeen (17) of each security agreement states:

Intending that each and every provision of this Security Agreement be fully effective and enforceable according to its terms, the parties agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of the Debtor and Secured Party in any way related to or arising under this Security Agreement or under one or more Obligation (sic) shall be governed by and construed in accordance with the laws of the State of Delaware (excluding its choice of law rules).

[8] "Contract" as distinguished from "agreement" means the total legal obligation that results from the parties' agreement as determined by the Uniform Commercial Code as supplemented by any other applicable laws. 6 Del.C. § 1-201(12).

consideration.

### 1. Plaintiff's security interest in the collateral survives the execution of the note

Defendants maintain that Plaintiff's security interest in the collateral did not survive the execution of the note. This is simply not the case. Plaintiff provided *prima facie* evidence of the security agreement's validity. <u>Beal Bank, SSB v. Lucks</u>, 791 A.2d 752, 756 (Del. Ch. 2000) (To be successful on a motion for summary judgment, a plaintiff must produce a *prima facie* record that would entitle plaintiff to judgment). Defendants have not shown a sufficient factual basis to create a genuine issue as to why the security agreements are not enforceable.

The question of the validity of Plaintiff's security interest is governed by Article 9 of the Uniform Commercial Code (U.C.C.) because it involves a credit transaction, and an agreement that creates a lien in favor of the creditor in the debtor's personal property to secure the debt.[9] This case is a typical secured transaction wherein the debtor, Defendants FEI and FEJ, and the secured party, Plaintiff CCG, entered into an agreement that created a security interest in certain property.

Plaintiff's security interest is enforceable between the parties and attached under 6 Del.C. § 9-203(a) because the three statutory requirements have been met. As a general rule, a security interest attaches when the debtor has signed a security agreement describing collateral, value has been given, and debtor has rights in collateral. <u>See</u> 6 Del.C. § 9-203 cmt. 2. When all of these elements exist, a security interest becomes enforceable between the parties and attaches under 6 Del.C. § 9-203(a). <u>See</u> 6 Del.C. § 9-203 cmt. 2.

---

[9] 6 Del.C. §9-109(a) **General scope of Article.** –Except as otherwise provided in subsections (c) and (d) [neither of which apply here], this Article applies to:
(1) a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract; ...

First, the parties entered into security agreements which provided a description of the collateral. Second, Plaintiff gave value for the security interest by loaning Defendants money. Third, the debtor had rights in the collateral because Defendants FEI and FEJ owned the collateral after they purchased it with the loan from Plaintiff.

Plaintiff's security interest was perfected at the time the note was executed. Once the interest is perfected, the secured party's interest in the collateral is effective against the world. The law governing perfection and priority of security interests, as a general rule, is the law of the jurisdiction where the debtor is located. See 6 Del. C. § 9-301.[10] Defendants FEI, a registered corporation and FEJ, a limited liability company, are both organized under the laws of Georgia and are therefore located in Georgia. Thus, Georgia law controls the issue of whether Plaintiff's security interest in the collateral was perfected.

The general rule is that a financing statement must be filed to perfect all security interests. Ga. Code. Ann. § 11-9-310(a). None of the exceptions to this general rule apply to the case at bar. See Ga. Code. Ann. § 11-9-310(b). Plaintiff perfected its security interest in the collateral by filing U.C.C. financing statements for all twelve (12) of the security agreements in the Superior Court of Cobb County, Georgia. Ga. Code Ann. § 11-9-501(a)(2) (Filing in the office of the clerk of the superior court of any county in Georgia is effective to perfect plaintiff's security interest in the collateral). Plaintiff's financing statements sufficiently indicate the debtor's name, (O.C.G.A. § 11-

---

[10] "This subpart does not address choice of law for other purposes. For example, the law applicable to issues such as attachment, validity, characterization (e.g., true lease or security interest), and enforcement is governed by the rules in Section 1-105; that governing law typically is specified in the same agreement that contains the security agreement." 6 Del. C. § 9-301 cmt. 2; (In this case, the parties specified in the security agreements and the promissory note that Delaware law applies.).

9-503(a)), and sufficiently describe the collateral. O.C.G.A. § 11-9-504(1). Plaintiff's financing statements are still in effect. O.C.G.A. § 11-9-515(a) (Financing statements are effective for five (5) years after the date of filing). Plaintiff's security interest in the collateral was valid and enforceable at the time the parties executed the note.

Defendants have failed to show how the execution of the note released Plaintiff's valid and enforceable security interest. There is nothing on the face of the note indicating the release of Plaintiff's security interest in the collateral. Moreover, Defendants have not produced any document that releases the collateral from the security interest.

Defendants rely on the affidavit of William J. Rials as proof of release of the security interest in the collateral. (document#18-1). The Rials affidavit states:

> On January 29, 2009, I signed a promissory note to Commercial Credit Group, Inc. ("CCG") on behalf of both FEJ and FEI. I signed that note based on discussions with Dan McDonough. In those discussions, Mr. McDonough agreed that, in exchange for my signing the promissory note, my son, Derek J. Rials, would be released from the personal guaranty that he had signed. Mr. McDonough also agreed to release all parties from liability for equipment that FEJ had sold to one of the principles of FEJ. In conjunction with the promissory note, I also gave CCG a second mortgage on real estate, a copy of which mortgage agreement is attached hereto.

(document#18-1).

The Rials affidavit lacks the basic information needed to create an issue of material fact. The Rials affidavit fails to identify Dan McDonough, his affiliation with Plaintiff, and whether Mr. McDonough had the authority to act on Plaintiff's behalf. Not only is the Rials affidavit vague, but it cannot be used to modify the terms of the security agreements. The security agreements preclude oral modification of their terms. Paragraph 13 of the security agreements specifically provides that:

> This instrument constitutes the entire agreement between the parties. This Security Agreement cannot be modified or terminated orally. Only a written instrument,

signed by an officer of the Secured Party, shall be effective to modify or terminate any obligation of Debtor to Secured Party, this Security Agreement or any other agreement between the parties, but only to the extent therein specifically set forth.

(document#17-3, Exhibit A). The Rials affidavit is insufficient to raise a question of material fact because it relies on discussions that were never reduced to writing and signed by the parties. Defendants must provide a document signed by an officer of Plaintiff CCG which by its terms modifies or terminates the security interest in the collateral. Defendants have not done so.

Instead, Defendants reference a "mortgage" that is "attached" to the Rials affidavit. (document#18-1, p. 2). The document attached to the Rials affidavit is titled "Security Agreement." It is signed by William J. Rials and dated January 29, 2009. (document#18-1, p. 3). The terms of the January 29, 2009, Security Agreement do not release Plaintiff's previous security interests in the collateral. Rather, the January 29, 2009 Security Agreement purports to create a new security interest in property, and refers to secured collateral in an attached "Schedule A." Defendants did not attach a "Schedule A". It cannot be determined whether the new security interest attached, and to what collateral it attached, because "Schedule A" is missing. It is clear, however, that the January 29, 2009 Security Agreement fails to create a genuine issue of material fact because it does not provide specifically for the release of Plaintiff's security interest in the collateral.

### 2. Derek Rials's personal guaranty survives the execution of the note

Defendants contend that Derek Rials's personal guaranty is no longer valid. According to the Rials affidavit, Defendants allege that in exchange for signing the promissory note, Derek Rials would be released from the personal guaranty that he signed. (document#18-1, p. 2). This argument is problematic for the reasons previously addressed in relation to the security agreements. The Court finds that the statements in the Rials affidavit regarding Derek Rials's personal guaranty do not

create an issue of material fact because both the guaranties and the note preclude oral modification.[11]

Defendants have not argued that the note or the guaranties are ambiguous, and thus open to the presentation of extrinsic evidence as to the parties' intent. <u>See</u> <u>Eagle Ind., Inc. v. DeVilbiss Health Care, Inc.</u>, 702 A.2d 1228, 1233 (Del. 1997). (In construing an ambiguous contractual provision, a court may consider evidence of prior agreements and communications of the parties as well as trade usage or course of dealing. This is true notwithstanding the presence of a routine integration clause). Here, the guaranties contain an integration clause which in effect states that this instrument constitutes the entire agreement of the parties. (document#17-3, Exhibit C). The integration clause in this case operates to exclude extrinsic evidence of the parties' intent because neither party argues that the contracts are ambiguous.

In the instant case, the meaning and application of the no oral modification clauses are

---

[11]Section 10 of the guaranties provides that:

> No waiver of any provision of this Guaranty shall be effective unless in writing signed by the duly authorized officer of the party to be charged, and no amendment, supplement or other modification of the Guaranty shall be effective unless in writing signed by the Guarantor relative to whom such writing applies. This instrument constitutes the entire agreement of the parties. This Guaranty cannot be modified or terminated orally. Only a written instrument, signed by an officer of the Creditor, shall be effective to modify or terminate any obligation of a Guarantor to Creditor or this Guaranty but only to the extent therein specifically set forth therein.

(document#17-3, Exhibit C).

The note states that:

> No waiver or modification of any of the terms or provisions of this Note shall be valid or binding unless set forth in a writing signed by a duly authorized officer of Holder [Plaintiff], and then only to the extent therein specifically set forth.

(document#17-3, p. 56).

straightforward and unambiguous. The no oral modification clauses in the note and the guaranties require the parties to execute a written signed release to relieve Derek Rials from personal liability on the guaranty. There is no evidence in the record of a release. Neither the note, the guaranties, nor the January 29, 2009 Security Agreement, contain any terms that could be construed as releasing Derek Rials from liability on the guaranty. Therefore, the Rials affidavit is insufficient to create an issue of material fact and Derek Rials's guaranty survived the execution of the note.

### 3. Plaintiff's purchase of the repossessed collateral was commercially reasonable

The Court finds that Plaintiff's purchase of the repossessed collateral was commercially reasonable pursuant to 6 Del. C. § 9-610(b). The U.C.C. requires the secured party to meet a high standard when disposing of collateral. Hicklin v. Onyx Acceptance Corp., 970 A.2d 244, 253 (Del. 2009). After default, the secured party may sell, lease, license, or otherwise dispose of the collateral. 6 Del. C. § 9-610(a). Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. 6 Del. C. § 9-610(b). A secured party's failure to establish a commercially reasonable sale of repossessed collateral bars it from recovering any deficiency from the debtor. Hicklin, 970 A.2d at 253 (Del. 2009).

In this case, Plaintiff bid on and purchased the repossessed collateral at a public sale. A secured party may purchase collateral at a public auction under 6 Del. C. § 9-610(c). Defendants assert, but without making any reasoned argument, that Plaintiff's purchase of the repossessed collateral was not commercially reasonable because Plaintiff did not prove the value of the collateral at the time of repossession. Defendants cite Georgia law for the proposition that Plaintiff's failure to show the value of the collateral at the time of repossession raises a presumption that the value of the collateral equals the debt on it. As the Court addressed previously, Delaware law applies on this

issue.

Under Delaware law, the price obtained for the collateral at the sale is only one factor used to determine the commercial reasonableness of the overall sale process. Hicklin, 970 A.2d at 244 (Del. 2009) (holding it was improper for the trial court to use only the sales price to determine that the sale was commercially reasonable). Certainly a low price suggests that a Court should scrutinize carefully all aspects of a disposition, but Defendants have not shown that the price obtained for the collateral was low. Defendants made no offer of proof that the collateral had any greater value, and under the circumstances, its acquisition by the secured party was reasonable. Moreover, Defendants benefitted from receiving credit against the amount owed under the note. As Plaintiff points out, if Plaintiff did not bid at the public auction, the repossessed collateral would have sold for less, and Defendants would have received less credit.

The Court finds that Plaintiff complied with the statutory requirements for the disposition of the collateral. W.J. Mattocks, the senior vice president of Plaintiff CCG, conducted the public auction. The Mattocks affidavit describes the method and manner of the public auction.[12] (document#17-1). Plaintiff sent authenticated notifications of disposition to Defendants within a reasonable time before the disposition. (document#17-4, Exhibit F). In doing so, Plaintiff complied with 6 Del. C. § 9-613(1)[13], 6 Del. C. § 9-611(c) and 6 Del. C. § 9-612(b). (notice sent after default

---

[12]Defendants argue that the Mattocks affidavit is inadmissible because it is hearsay. Defendants' admissibility arguments will be addressed in section D, which discusses Plaintiff's conversion claim.

[13]There are six (6) notifications of disposition which meet the statutory requirements. 9-609(1) The contents of a notification of disposition are sufficient if the notification:
    (A) describes the debtor and the secured party;
    (B) describes the collateral that is the subject of the intended disposition;
    (C) states the method of intended disposition;

and 10 days or more before the earliest time of disposition set forth in the notification is considered reasonable).

Plaintiff provided an "Affidavit of Publication" certifying that a Notice of Public Auction was published twice on the dates of July 22nd and 29th, 2009 in the *Forsyth County News*, the official newspaper in which the Sheriff's advertisements for Forsyth County, Georgia are published. (document#17-4, Exhibit G). Plaintiff also included the "Notice of Public Auction" which shows the date, location, address, and time of the auction, and describes the collateral to be auctioned. (document#17-4, Exhibit G). Additionally, Plaintiff submitted a list of the collateral and the final bids for each item. (document#17-4, Exhibit H); See Hicklin, 970 A.2d at 252 (Del. 2009) (Holding that a secured party must provide information on the method, manner and place of sale to establish commercially reasonable disposition of collateral).

Plaintiffs have complied with Delaware's statutory requirements as interpreted by the Delaware Supreme Court for the disposition of repossessed collateral under Article 9 of the U.C.C. The Court, therefore, finds that there are no issues of material fact as to the commercial reasonableness of the disposition of the repossessed collateral.

### 4. The note has sufficient consideration to be enforceable

Neither party disputes that there was consideration for the execution of the note, but rather, the parties disagree as to the subject of the consideration. Plaintiff contends that the note primarily consolidated Defendants' pre-existing unpaid equipment loans from Plaintiff into a single obligation, and that the underlying consideration, Plaintiff's equipment loans, had already been provided.

---

(D) states that the debtor is entitled to an accounting of the unpaid balance

Defendants argue that the consideration for the execution of the note was an oral agreement to release Derek Rials from liability on his personal guaranty.

Delaware law's aversion to oral modifications of written agreements drains any strength from Defendants' argument. See Continental Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1230 (Del. Ch. 2000) ("A party asserting an oral modification must prove the intended change with specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document."). Defendant's vague assertions surrounding Derek Rials's release from liability fail to prove the parties' intentions with specificity and directness.

The terms of the note confirm that there was consideration for the execution of the note. The note provides that the Defendants received "value" for the execution of the note.[14] Defendants agreed to the terms of the note when William J. Rials signed it. Then, Defendants made payments under the note. Defendants cannot now say that the note is unenforceable due to lack of consideration when the terms of the promissory note state that value was received by Defendants for the execution of the note. Thus, there is no issue of material fact as to the sufficiency of consideration for the execution of the note.

---

[14] The note states:

> For value received, the undersigned (hereinafter referred to as "Maker"), jointly and severally if more than one, irrevocably and unconditionally promises to pay to the to the order of Commercial Credit Group Inc., its successor or assigns ("Holder") at such place as the Holder hereof may from time to time appoint, the sum of Two Million Two Hundred Seven Thousand One Hundred Thirty-Five and 10/100 Dollars ($2,207,135.10)...

(document#17-3, p. 56).

5. <u>Plaintiff is entitled to a deficiency judgment against Defendants FEI and FEJ on the note and against William Rials, Derek Rials, and TGR Enterprises on the guaranties</u>

In a suit on a promissory note, the plaintiff must produce the note in question to establish a *prima facie* case. The burden then shifts to the defendant to prove any affirmative defenses. <u>See</u> <u>Beal Bank, SSB v. Lucks</u>, 791 A.2d 752, 756 (Del. Ch. 2000) (To be successful on a motion for summary judgment, a plaintiff must produce a *prima facie* record that would entitle plaintiff to judgment). Plaintiff has presented a properly executed promissory note which William J. Rials does not deny signing. William J. Rials admits to signing the promissory note in his affidavit. (document#18-1).

On January 29, 2009, William J. Rials, acting as agent for Defendants FEI and FEJ, signed the note payable to Plaintiff CCG, as holder, in the amount of $2,207,135.10. (document #17-3, p. 56). The note was payable in 6 installments each in the amount of $20,000.00; then 54 installments each in the amount of $38,650.65. The payments were to begin on May 5, 2009.

Defendants defaulted on the note by failing to make payments.[15] William Rials signed the promissory note and thus judgment against Defendants FEI and FEJ on the promissory note is proper. The Court finds Defendants FEI and FEJ liable to Plaintiff on the note for the principal

---

[15]According to the Negotiable Promissory Note, default on the note occurs:

If any payment is not made when due, or if there is a default by Maker under any present or future agreement with Holder or a default of any guarantor of Makers obligations under this Note, all remaining payments shall, at the option of the Holder, without notice, become immediately due and payable, and the unpaid balance shall bear the interest at the Acceleration Rate until paid in full.

(document#17-3, p. 56 ).

amount of $1,391,532.59, plus pre-judgment interest at the rate of 1/15 of 1% per day,[16] which is

$138,294.68, for a total of $1,529,827.27. As to the guaranties, the court finds Derek Rials, William

J. Rials and TGR Enterprises, Inc. personally liable for the $1,529,827.27 deficiency.

### 6. Attorneys' Fees

The Plaintiff also seeks attorneys' fees as provided in the subject contract. Delaware permits

the recovery of "reasonable" attorneys' fees if the payment of such fees is authorized by statute. Rock

v. Short, 336 A.2d 219, 221 (Del.1975); Great American Indem. Co. v. State to Use of Mills, 88 A.2d

426, 428 (Del.1952). The relevant statutory authority for attorneys' fees in this case would have to

come from 10 Del.C. § 3912 , which allows recovery of attorneys' fees incurred to collect "any note,

bond, mechanics lien, mortgage, invoice or other instrument of writing," but limits recovery of

attorneys' fees to twenty percent (20%) of the "the amount adjudged for principal and interest."

Therefore, the Court will grant Plaintiff's request for attorneys' fees for attorneys' services rendered

to recover the amount due Plaintiff under the note. The amount of such fees will be determined

---

[16]The note provides for interest on the entire unpaid balance at the rate of 1/15 of 1% per day. (document#17-3, p. 56). Delaware law recognizes the right to collect pre-judgment interest on a debt. Metropolitan Mutual Fire and Ins. Co. v. Carmen Holding Co., 220 A.2d 778, 781 (Del.1966). Prejudgment interest is appropriate if a plaintiff requests such an award in its pleadings or raises the issue at trial. Collins v. Throckmorton, 425 A.2d 146, 152 (Del.1980). Delaware statutes recognize the right to collect interest. 6 Del.C. § 2301 provides, in pertinent part:

> (a) Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon, and judgments entered after May 13, 1980, shall bear interest at the rate in the contract sued upon...
> (c) Notwithstanding any other provision in this chapter to the contrary, there shall be no limitation on the rate of interest which may be legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of any borrower.

according to the reasonable worth of the attorneys' services, taking into consideration such elements as the standing of the attorney at the bar, the means of the client, the nature and importance of the cause, the time and labor expended on behalf of the client, the amount involved in the litigation, and the amount finally recovered. <u>Great American Indem. Co.</u>, 88 A.2d at 431 (Del.1952). For these reasons, the Plaintiff's request for attorneys' fees will be <u>granted</u>. The Court directs Plaintiff's counsel to submit an attorneys' fees affidavit addressing the factors listed above as well as his hourly rate and the number of hours expended on this matter. The Court will then enter an appropriate order awarding attorneys' fees. Plaintiff's counsel shall submit the affidavit within ten days of the docketing of this Order.

The Court will **GRANT** Plaintiff's Motion for Summary Judgment as to Plaintiff's claim for breach of contract against Defendants FEI, FEJ, William J. Rials, Derek Rials, and TGR Enterprises, LLC.

### D. <u>Conversion Claim</u>

Plaintiff seeks to hold Defendants FEI, FEJ, William J. Rials, and Derek Rials liable for the conversion of the secured collateral. Defendants raise two issues regarding the conversion claim. Defendants contend that the FEI Invoices, (document#17-3, Exhibit D), are unauthenticated inadmissible hearsay and that W.J. Mattocks' opinion of the value of the D-31P Komatsu, (document#17-1, ¶28), is likewise inadmissible hearsay, and therefore cannot be considered on a motion for summary judgment. Next, Defendants contend there is an issue of material fact as to which, if any, actions were taken by William and Derek Rials with respect to the sale of the secured collateral.

1. <u>Evidentiary Issues</u>

######  a. The FEI invoices are authenticated nonhearsay under Fed. R. Evid. 801(d)(2)(b)

Plaintiff submitted nineteen (19) invoices showing FEI's sales of twenty-four (24) items of Plaintiff's secured collateral.(document#17-3, Exhibit D). Defendants assert that the FEI invoices[17] are not properly authenticated pursuant to the Fourth Circuit decision in Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). (upholding the district court's exclusion of untimely, unauthenticated documents submitted the morning of the summary judgment hearing). To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Fed. R. Civ. Pro. 56(e).[18] Id. Authentication is a condition precedent to admissibility, and is satisfied by showing that the matter in question is what its proponent claims. Fed. R. Evid. 901(a).

---

[17]Defendants actually refer to "the business records" submitted by Plaintiff, but do not cite an exhibit number or particular document name. The Court, therefore, must assume that the Defendants are referring to the FEI invoices, (document#17-3, Exhibit D), because those are the relevant documents to Plaintiff's conversion claim.

[18]Federal R. Civ. Pro. 56(e) provides:

Affidavits; Further Testimony
(1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

(2) Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

It is true that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. Orsi v. Kirkwood, 999 F.2d at 92 (4th Cir. 1993). However, the FEI invoices are authenticated by the Mattocks affidavit (document#17-2) in which Mattocks, a senior vice president of CCG, avers he is personally familiar with CCG's business transactions and relationships with Defendants. Mattocks also avers in a second affidavit (document#17-1) that Plaintiff submitted true and correct copies of nineteen invoices showing Defendants' sales of twenty-four items of Plaintiff's collateral. (document#17-1, ¶22). Mattocks further avers that Defendants did not turn over to Plaintiff the sale proceeds from their unauthorized sales of the collateral. (document#17-1, ¶23). The Mattocks affidavit is sworn to, and the FEI invoices were filed with the affidavit. Therefore, the FEI invoices have been submitted in a form which meets the requirements of Fed. R. Civ. Pro. 56. But, the mere authentication of a document that is hearsay does not render the document admissible unless it is admissible under an exception to the hearsay rule.

Since the FEI invoices contain statements made by employees of FEI, they constitute an admission by a party opponent and thus are not inadmissible hearsay. Fed. R. Evid. 801(d)(2)(B); See Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1115 (4th Cir. 1988)(reports such as discharge monitoring report required by discharge permit may be used as admissions in court to establish a defendant's liability).

Furthermore, the FEI invoices possess the reliability of business records. The FEI invoices are on FEI letterhead, they show the name of the purchaser, and the price billed for each item, including one particular item of collateral [the D-31P Komatsu] which was purportedly purchased by Derek Rials. (document#17-3, Exhibit D). The FEI invoices are an admission by a party opponent under Fed. R. Evid. 801(d)(2)(B). Thus, there is no issue of material fact as to the admissibility of the

FEI invoices.

       b. <u>Mr. Mattocks' opinion of value of the D-31P Komatsu is admissible</u>

Mr. Mattocks conducted the public auction of the repossessed collateral. In his affidavit, Mattocks states that the value of the D-31P Komatsu [an item of the secured collateral allegedly purchased by Derek Rials] was approximately $15,000.00. (document#17-1, ¶28). Plaintiff attached a printout from an internet website to the Mattocks affidavit as evidence of a sale of similar equipment for $15,000.00. (document#17-4, Exhibit J).

The Fourth Circuit previously upheld the admission of nonexpert opinion testimony as to the value of a piece of machinery in <u>Travelers Indem. Co. v. Plymouth Box & Panel Co.</u>, 99 F.2d 218, 222 (4th Cir. 1938) (upholding the admission of opinion testimony as to the value of a steam turbine, where the opinion was expressed by the president of the company owning the machinery who was familiar with the machine).

Like the opinion of value in <u>Travelers</u>, Mattocks' opinion of the value of the D-31P Komatsu is admissible. However, Exhibit J is hearsay and does not fall within the Fed. R. Evid. 803(17) exception for market reports and commercial publications. Exhibit J is not a publication generally relied upon by the public. It is an internet advertisement from a construction equipment retailer in New Jersey for a 1988 D-31P Komatsu for $15,000.00. Although inadmissible hearsay, Exhibit J merely corroborates Mattocks' opinion of value of the D-31P Komatsu. Thus, there is no issue of material fact as to the admissibility of Mattocks' opinion of the value of the D-31P Komatsu, even though the attached document, Exhibit J, is inadmissible.

      2. <u>Defendants raise a genuine issue of material fact as to whether William J. Rials and Derek Rials, either or both, are liable for the conversion of the secured collateral</u>

There is a question of material fact as to what specific acts, if any, William and Derek Rials took in relation to the sale of the secured collateral. An officer of a corporation cannot be held jointly liable if there is no evidence he specifically directed a particular act to be done or participated or co-operated in the commission of a tort according to Cherry v. Ward, 204 Ga. App. 833, 420 S.E.2d 763 (1992). There is evidence in the record that sales of the secured collateral were made by FEI.(document#17-3, Exhibit D). However, it is unclear whether Derek Rials directed, participated or cooperated in those sales. It is also unclear to what extent William Rials was involved in the sales of the secured collateral.

When there is insufficient evidence to show whether an individual directed, participated or cooperated in the commission of an alleged tort, then summary judgment is improper. See Cato v. English, 228 Ga. 120, 123, 184 S.E.2d 161, 164 (Ga. 1971). In Cato, a homeowner filed an action against a developer, and a corporation owned by the developer, for damages and an injunction to prevent the defendants from developing a certain tract of land as multifamily residences. Id. The defendants' agent allegedly had represented to the homeowner that all of the blocks would be developed for single f amily residences. The Georgia Supreme Court upheld the denial of summary judgment. The Court reasoned that there was an issue as to whether defendants' agent had made the representation to the homeowner that all of the blocks would be developed for single family residences, and if so, which defendants were liable for the misrepresenation.

Plaintiff asserts that there is no genuine issue for trial because William and Derek Rials were the only persons with the necessary authority, interest and access to repeatedly sell each piece of the secured collateral. Even assuming Plaintiff's assertion is true, there remains a question of which one of the two, William or Derek Rials committed the acts.

Plaintiff also contends that an individual's status as a corporate officer creates a presumption of ability to control a small-closely held corporation as stated in <u>FTC v. Windward Marketing, Ltd.</u>, 1997 WL 33642380, at \*14 (N.D. Ga Sept. 30, 1997) and <u>FTC v. Nat'l Urological Group, Inc.</u>, 645 F.Supp.2d 1167, 1207 (N.D. Ga. 2008). However, Derek Rials is not an officer of FEI. Thus, the presumption that he has the ability to control FEI does not arise.

Here, as in <u>Cato</u>, there is an issue of material fact as to what individual actions Defendants took and their respective liability. Summary judgment is inappropriate in the face of such disputed issues of material fact. Therefore, the Court will **DENY** Plaintiff's Motion for Summary Judgment as to Plaintiff's conversion claim against Defendants FEI, FEJ, William J. Rials, and Derek Rials.

### E.    Claim under the Uniform Fraudulent Transfer Act

Plaintiff seeks summary judgment as to its claim pursuant to the Uniform Fraudulent Transfer Act, O.C.G.A. §§ 18-2-70 *et seq*. ("UFTA").[19] The UFTA provides a creditor with several remedies against a fraudulent transfer, including the avoidance of a transfer to the extent necessary to satisfy the creditor's claim and attachment against the asset transferred or other property of the transferee. O.C.G.A. § 18-2-77. Under the UFTA, Plaintiff must prove that the sale of the secured collateral was a fraudulent transfer undertaken with the "actual intent to hinder, delay or defraud" the Plaintiff. O.C.G.A. § 18-2-74. "Actual intent" turns upon the consideration of eleven statutory factors.[20]

---

[19]Plaintiff has not specifically pled a claim for relief under either North Carolina, N.C.G.S. §§ 39-23.1 *et seq*., or Georgia, O.C.G.A. §§ 18-2-70 *et seq*., versions of the UFTA because Plaintiff failed to cite either statute in the Complaint. (document#1). However, there are references to both North Carolina and Georgia's statutes in Plaintiff's "Motion Seeking Partial Summary Judgment." (document#17). Georgia's version of the UFTA applies because Georgia is the state where the alleged fraudulent conveyance occurred.

[20]O.C.G.A. § 18-2-74(b) factors are as follows:
    (1) The transfer or obligation was to an insider

Plaintiff attempts to establish the existence of several of the statutory factors, specifically subsections (b)(1), (3), (7) and (9) of O.C.G.A. § 18-2-74. Plaintiff urges that there is no contrary evidence or denial by Defendants of the facts establishing the statutory factors. While it is true that there is no affirmative denial in the Rials affidavit, (document#18-1), the Defendants deny all allegations relating to Plaintiff's UFTA claim in their Answer. (document#3, pp.11-12). These circumstances alone do not show Plaintiff is entitled to summary judgment.

    1. <u>Summary judgment is inappropriate on the UFTA claim because there is a question of fact regarding the Defendants' subjective state of mind</u>

Summary judgment is inappropriate for a fraud claim because it involves a party's state of mind. <u>Quill v. Newberry</u>, 238 Ga. App. 184, 189, 518 S.E.2d 189, 193 (Ga. App. 1999)(reversing the grant of summary judgment in a fraud case where there was a question of fact as to whether the defendant knew of a termite infestation and sought to mask it in order to induce plaintiff to purchase a home). Here, conflicts in evidence regarding Defendants' " actual intent" establish genuine issues

---

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

of material fact. First, there is conflicting evidence is as to whether the transfer was made to an insider. Next, there is insufficient evidence in the record to determine whether the sale of collateral was disclosed or concealed, whether the Defendants removed or concealed assets, and whether FEI was insolvent or became insolvent shortly after the sale of collateral or the promissory note was executed.

Moreover, there is no admission by Defendants establishing that either William or Derek Rials had the requisite intent to delay or defraud Plaintiffs. Otero v. Vito, 2009 WL 3063426 at *7 (M.D. Ga. Sept. 22, 2009) (granting summary judgment on a UFTA claim where admissions in an affidavit established that transfers were fraudulent).

Therefore, the Court will **DENY** Plaintiff's Motion for Summary Judgment as to Plaintiff's claim under the UFTA against Defendants FEI, FEJ, William J. Rials, Derek Rials.

## III. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The Plaintiff's "Motion Seeking Partial Summary Judgment" (document #17) is **GRANTED IN PART** and **DENIED IN PART**. That is, the Court will enter judgment for the Plaintiff in the amount of $1,529,827.27, and will award attorneys' fees in an amount to be determined after submission of Plaintiff's counsel's affidavit.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

Signed: January 8, 2010

David S. Cayer
United States Magistrate Judge